UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:25-cr-386-KKM-LSG

MAURICIO FLORES

## SENTENCING MEMORANDUM

The United States of America files this sentencing memorandum requesting this Court sentence the defendant, Mauricio Flores ("Flores") to a guidelines sentence of 97 months of imprisonment. In support thereof, the United States submits as follows:

### I.      Factual Background

Mauricio Flores was a member of a members-only dark web site dedicated to child pornography. The biographical information he provided noted his membership in six other online communities on the dark web used exclusively for sharing child pornography, all of which had been shut down by law enforcement. Flores specifically noted his membership in a community that was active on the dark web prior to 2014, giving Flores more than a decade of active but undetected involvement in child pornography. He described his age of attraction as 8-16.

The dark web site was infiltrated by law enforcement. A log of Flores' activity on the site includes his assertion that he was rebuilding his collection of child pornography and his request for a series of videos that he identified by name. As a

1

result of his request, more than 20 video files were posted to the message board. Numerous other users watched the videos, as evidenced by their comments on the message board. Flores commented on the message board to thank the user who posted the content he had requested. Agents also noted Flores' participation in conversations about the Instagram reels algorithm on a forum dedicated to child pornography featuring victims as young as four years old, as well as in a discussion forum on the topic of encrypted drives with Tails OS.

On May 23, 2025, a search warrant was executed at Flores' residence in Davenport, Florida. Agents observed numerous items of memorabilia linked to Flores' username on the dark web site displayed in the home. Agents also observed a tattoo of a portion of Flores' username for the dark web site on his upper arm. One of the desktop computers in the home had VirtualBox software, which allows users to create and run multiple "virtual machines" from a single computer, installed on it. Agents also located a USB drive plugged into that computer that was configured as a "boot drive"[1] for the Tails operating system (Tails OS), which routes all internet traffic through the Tor network, which is used to access the dark web, and runs as a live system from its host USB drive, leaving no trace of user activity on the host computer. Flores participated in discussions about Tails OS in the dark web child pornography forum.

---

[1] A boot drive is a removable drive from which a computer can load and run an operating system. Configuring a drive as a boot drive involves setting it as the primary storage device from which your computer loads the operating system.

At the time of the search warrant's execution, Flores voluntarily agreed to be interviewed by FBI agents. When asked why he thought the FBI was at his home, he guessed that agents were present at his home because of child pornography. He described using a Tails OS boot drive. He identified numerous devices as belonging to him, including an Apple iPhone 14, a Sabrent hard drive, and an MSI laptop. The devices, all of which were manufactured outside of the United States, were forensically examined.

On Flores' iPhone 14, agents found encrypted chats in the Telegram application. Agents were unable to fully review the chats, but portions of the content remained. Images associated with the chats included images of child pornography depicting prepubescent children, including toddlers and infants. A review of the Telegram application on Flores' phone revealed that Flores was also a member of a Telegram chat group called "Teens IG," which depicted young teens, approximately 13-17 years of age, in sexually suggestive poses and outfits. The material visible in the chats showed a "sample" image with a link instructing group members to click the link for more. According to the URLs visited on the iPhone, Flores also visited websites such as piratebay.org and 4chan.org, which often are utilized to download child sexual abuse material. He was also a member of a Discord group entitled "[emoji not]18 NSFW." "NSFW" is an acronym that means "not safe for work" in reference to explicit content. In the saved usernames and passwords on the iPhone, the same password Flores used on the dark web site was saved as his "Apple keychain generic password," which was used to log into multiple applications. Saved

3

to the "hidden" folder on Flores' phone were files of child erotica, as well as saved videos from Instagram and TikTok depicting prepubescent girls between the ages of 7 and 11 stretching and posing. Flores had participated in discussions about the Instagram algorithm on the dark web child pornography site. Also located in a "hidden" folder on the iPhone's camera roll were hundreds of voyeuristic photos taken of both adult women and female children in areas such as local parks, parking lots, water parks, sporting venues and stores. Numerous photographs focused on the buttocks of female children between the ages of 7 and 14 in swimwear.

On the Sabrent hard drive, agents observed a file of child sexual abuse material depicting a prepubescent female child, approximately 13 years of age. The same file was cached in the unallocated space of the MSI laptop, along with four other videos of child pornography. The MSI laptop also had indicators that Tails OS had been used on it. Flores told agents he had reformatted that laptop for his daughter to use.

## II.    **Procedural Background**

Flores was arrested pursuant to a complaint on July 21, 2025. Doc. 2. On August 12, 2025, a grand jury returned a one-count indictment charging Flores with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Doc. 18. On January 28, 2026, Flores pled guilty. Doc. 40. On February 12, the Court accepted Flores' guilty plea and scheduled him for sentencing on May 6, 2026. Doc. 43.

### III.    Presentence Investigation Report

On April 22, 2026, the United States Probation Office issued its Final Presentence Investigation Report (PSR). Flores' total offense level is 28 points. With a criminal history category of I, his guideline range of imprisonment is 78 – 97 months. PSR ¶ 58. The guideline range for supervised release is 5 years to life. PSR ¶ 61.

### IV.    Argument for a Guidelines Sentence of 97 Months

In light of the nature and circumstances of Flores' offenses, a guidelines sentence of 97 months is appropriate for the purposes of just punishment, deterrence, and for the protection of the public against him. *See* 18 U.S.C. § 3553(a). The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to

provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a guideline sentence.

### A.    Nature and Circumstances of the Offenses

The nature and circumstances of Flores' offense make it clear that Flores is a dedicated and sophisticated consumer of child pornography. Despite being an active member of multiple online communities dedicated to sharing images and videos of children being sexually abused for more than a decade, Flores evaded detection. He used the dark web, encrypted messaging platforms, and specialized software and operating systems to protect himself as he enjoyed images and videos of children being violated. He stored those images for his own pleasure, and when he lost his cache of child pornography, he relied on the community of fellow child pornography consumers to help him rebuild his supply. He requested a series of child pornography videos by name; in response to that request, more than 20 videos depicting a child being sexually battered were published on the message board. They were viewed by the appreciative members of the dark web site, as well as by Flores himself, who thanked the person who supplied the videos he requested.

Even as he posted about his need to rebuild his collection of child pornography, Flores was very careful about how he maintained access to it. For all his caution, though, Flores' electronic devices are a clear testament to his interest in child pornography. The encrypted chats on Telegram and the Discord group dedicated to "NSFW" images of children show that Flores diversified his access

points to child pornography and sought community with other consumers of child pornography across multiple platforms. It is also clear that in addition to using operating systems like Tails OS and software like Virtual Box, he used multiple devices. The video file depicting the identified victim was still available in the unallocated space of a laptop that Flores owned and said he had reformatted for his daughter's use. He did not have to worry about losing the file, though, because he saved the video, named to indicate the age of the identified victim, to a hard drive for his continued access.

Flores' longstanding interest in child pornography and his participation in numerous communities centered on finding, sharing, and enjoying child pornography demonstrate his utter callousness towards the victims of child exploitation. His sophistication in satisfying his illicit sexual interests highlights his ability to re-offend undetected. However, the aggravating circumstances of Flores' offense extend even beyond these factors. Flores began accessing videos posted to social media by young girls and saving those videos to a hidden folder on his phone, turning a child's innocent engagement with her own online community into an object of his own sexual gratification. Perhaps most egregiously, Flores, no longer satisfied with finding child pornography and the objects of his sexual attention online, turned to the novelty of his own community. Flores, who had a partner and children of his own, struck up a Tinder relationship with a woman who frequently sent him non-sexual photographs of her young daughters, who were in the same age range as the children whose Instagram and TikTok videos he was saving to his

phone—the same range he listed on the dark web site as his age of attraction. While in the community—at sports fields, in parking lots, and at Weeki Wachee Springs—Flores captured hundreds of voyeuristic images of women and girls, often focusing on their buttocks. The same callousness that drove Flores' online consumption of child pornography extended to his behavior in the community, where any woman or child who captured his interest became a sexual object whose consent was immaterial.

The facts of this case and Flores' conduct demand a guidelines sentence of 97 months' imprisonment. Flores demonstrated a pattern of violating the law without remorse by continuing to view and possess child pornography. Flores' unyielding obsession with child pornography and sexual attraction to children is clear. His behavior in the community is an alarming signal that Flores was no longer content to engage with the sexual abuse of children only by accessing child pornography produced by others online. Flores' self-professed history, the breadth of his engagement with platforms dedicated to child pornography, and his sophistication in seeking out child pornography make it apparent that he will continue to access and collect child pornography unless he is stopped.

### B.    History and Characteristics of the Defendant

Flores' history and characteristics also weigh in favor of a 97 month sentence of imprisonment. Flores is an adult who had what he describes as a stable upbringing free of abuse. He has familial and romantic relationships, and had been gainfully employed at the same job for approximately nine years at the time his actions were

8

discovered. Flores' criminal activity did not spring from a period of instability or trauma, nor was it a one-time mistake. He systematically sought out images of children being violated and sexually abused because he wanted to. He took careful steps to hide his activities from everyone around him and was successful for years. His electronic devices evidence an escalating unsafe sexual fixation on children both online and offline. These characteristics require serious intervention to protect the community.

**C.     Seriousness of the Crime, Promoting Respect for the Law, Deterrence, and the Need for Just Punishment**

As the Eleventh Circuit explained in *United States v. Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d 1160, 1206 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011). "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Congress has expounded that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct," as well as the "harm done or threatened by the offense."  S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59.  Because "[t]he seriousness of the crime varies directly with the harm it causes or threatens…" this Court should impose the guidelines sentence.  *See Irey*, 612 F.3d at 1206.

The identified victim in this case and her mother both described how the continuing circulation of images and videos of her exploitation has devastated her. The knowledge that images of her exploitation are permanently on the internet, accessible to people who obtain gratification from her trauma, overwhelms her with anxiety, shame, and self-loathing. She experiences hopelessness when she thinks about the future; in the present, she is hypervigilant against potential threats, recognition, or further victimization. Her life and her family's lives have been forever changed; her hopes for the future have been permanently altered. Mauricio Flores— not only a collector of child pornography who seeks out groups of other adults who share and consume child pornography but also a man who has unleashed his voyeuristic sexual appetites on unsuspecting children in the community he lives in— is the embodiment of her fears.

Flores' possession of images and videos of child sexual abuse material shows that he has no respect for the law. The lengths he went to disguise his activity and covertly collect his child pornography highlight his knowledge that what he was doing was wrong. Despite that, he persisted in collecting child pornography and participating in groups of individuals drawn together by their shared interest in child pornography. The only way to promote respect for and confidence in the law in this case is to sentence Flores to a guideline sentence.

Deterrence is also important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir.

2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id.*

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Flores fits well within that class. His obsession with the sexual exploitation of minors, his sophistication in accessing and hiding child pornography, and his voyeuristic interest in children on and off the internet evidences a high probability of recidivism. *See, e.g.*, *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported.") A strong need exists to protect children in the community from Flores.

11

## V.    Conclusion

Flores' freedom and autonomy are incompatible with the safety of children in our community. He has repeatedly shown he will go to great lengths to obtain child sexual abuse material. A guidelines sentence of 97 months' imprisonment is required to reflect the seriousness of Flores' crimes, provide just punishment for those crimes, protect the children in the community, and promote respect for the law.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:    /s/ *Muriel R. Moore*
       Muriel R. Moore
       Assistant United States Attorney
       Florida Bar No. 1011059
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:    (813) 274-6000
       Facsimile:    (813) 274-6358
       E-mail: muriel.moore@usdoj.gov

**U.S. v. Mauricio Flores**          **Case No. 8:25-cr-386-KKM-LSG**

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which

will send a notice of electronic filing to counsel of record.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    /s/ Muriel R. Moore
       Muriel Moore
       Assistant United States Attorney
       Florida Bar No. 1011059
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:   (813) 274-6000
       Facsimile:    (813) 274-6358
       E-mail: muriel.moore@usdoj.gov